**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-00358-STV

LYNDA HICKEY,

    Plaintiff,

v.

NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO,

    Defendant.

_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on the Motion of Defendant National Association of Letter Carriers, AFL-CIO ("NALC") to Dismiss the Complaint [#17] ("the Motion"). The parties have both consented to proceed before this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. [##11,12] This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

## I. BACKGROUND[1]

Plaintiff began working for the United States Postal Service ("Postal Service") in 2000 and has worked at the facility in Fort Collins, Colorado since 2003. [#4, ¶ 2] She has belonged to the NALC for her entire employment with the Postal Service. [*Id.*] She always received above average job reviews. [*Id.*]

Plaintiff is the only deaf letter carrier at the Fort Collins facility. [*Id.*] Plaintiff has a cochlear implant in her left ear and uses a hearing aid in her right ear. [*Id.* at ¶ 3] With these devices, Plaintiff's hearing tests indicate that she can hear approximately one-third of the words spoken to her. [*Id.*]

During the course of her employment, Plaintiff made at least ten attempts to have the NALC file a grievance on her behalf because the Postal Service would not accommodate Plaintiff's deafness. [*Id.* at ¶ 4] The NALC refused to file such grievances, stating that there was nothing in the Collective Bargaining Agreement ("CBA") that would allow for such a grievance. [*Id.*] Because the NALC refused to file these grievances, Plaintiff instead filed complaints with the Equal Employment Opportunity Commission

---

[1] The facts are drawn from the allegations in Plaintiffs' Complaint and Jury Demand [#4], which must be taken as true when considering the Motion. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)). The facts are also drawn from another proceeding from this District. *See Hickey v. Brennan*, 1:19-cv-00413-MEH (the "19-413 Case"). "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). "This includes another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand.'" *Hodgson v. Farmington City*, 675 F. App'x 838, 841 (10th Cir. 2017) (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)). Moreover, Plaintiffs' Complaint references the 19-413 Case. [*See generally* #4]; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (holding a court "must consider the complaint in its entirety . . . [and] documents incorporated into the complaint by reference").

2

("EEOC"), four of which proceeded to an EEOC determination. [*Id.* at ¶ 5] The NALC did not help with the EEOC complaints. [*Id.*]

In approximately 2012, Gerry Hoffman, the NALC's Fort Collins steward, told Plaintiff or her husband that she could not pursue an EEOC claim at the same time as a union grievance. [*Id.* at ¶ 6] Danielle Fake-Moorman, President of the NALC Branch 849, told Plaintiff or her husband the same thing in 2014. [*Id.*] In fact, Plaintiff could pursue both a union grievance and an EEOC complaint. [*Id.* at ¶ 7]

In November 2016, Jessica Bergen became Plaintiff's new station manager. [*Id.* at ¶ 8] Ms. Bergen and several co-employees believed that Plaintiff could hear and that she was using her "alleged" deafness to make unjustified requests. [*Id.*] Because Plaintiff sought accommodations, Ms. Bergen and Plaintiff's co-employees "have continually discriminated and retaliated against [Plaintiff]." [*Id.*]

On September 30, 2017, Jackie Raynes, one of Plaintiff's co-employees, approached Plaintiff from behind while Plaintiff was sorting her mail into cubbyholes. [*Id.* at ¶ 9] Plaintiff felt something touch her heel, turned around, and saw Ms. Raynes yelling at her, inches from her face. [*Id.*] Plaintiff pushed Ms. Raynes away. [*Id.*] As a result of the incident, Plaintiff was suspended without pay. [*Id.* at ¶ 10]

On October 17, 2017, Ms. Bergen issued a Notice of Removal charging Plaintiff with "unacceptable conduct" and effectively terminating Plaintiff's employment. [*Id.* at ¶¶ 10, 13] Ms. Bergen issued the Notice of Removal despite knowing that Ms. Raynes had manufactured the incident in an attempt to justify Plaintiff's termination. [*Id.* at ¶ 10] In a subsequent statement, Ms. Bergen indicated that she recommended termination because of prior written actions the Postal Service had taken against Plaintiff for altercations with

co-workers and customers, and because Plaintiff had been aware of the rules and been given multiple warnings to correct her behavior. [*Id.* at ¶ 11] Although Plaintiff had received two prior written warnings, neither involved actual violence in the workplace. [*Id.* at ¶ 12] According to Plaintiff, Ms. Bergen terminated Plaintiff because she did not want to work with Plaintiff's disability and was tired of Plaintiff's repeated attempts to obtain accommodations. [*Id.* at ¶ 13]

Plaintiff's removal was deferred during the early stages of her grievance process but became effective on December 5, 2017. [*Id.* at ¶ 14] Plaintiff timely filed a union grievance of her October 2 suspension and October 17 Notice of Removal. [*Id.* at ¶ 15] While Plaintiff was initiating the grievance procedure for her October 2 suspension, Plaintiff's husband asked Ms. Fake-Moorman if Plaintiff could also pursue an EEOC charge. [*Id.*] Ms. Fake-Moorman advised Plaintiff that she could not pursue an EEOC charge at the same time she was pursuing a union grievance. [*Id.*] But for this advice, Plaintiff would have filed an EEOC complaint. [*Id.* at ¶ 16]

On May 3, 2018, the arbitrator issued his decision that the Postal Service had a valid reason to terminate Plaintiff and denied her grievance. [*Id.* at ¶ 17] On May 9, 2018, Roger Bledsoe, the western area national business agent, called Plaintiff's husband about the arbitration result. [*Id.*] He reasserted that Plaintiff could not file an EEOC charge while the grievance was pending, but that she could file a charge now that the arbitration had been completed. [*Id.*]

On May 9, 2018, Plaintiff sought relief through the internal EEOC process, but was denied relief. [*Id.* at ¶ 18] She pursued relief through the EEOC, but that too was denied. [*Id.*] She then filed a Rehabilitation Act claim in the United States District Court for the

4

District of Colorado. [*Id.*; *see also* 19-413 Case, #1] United States Magistrate Judge Michael E. Hegarty granted summary judgment to the Postal Service on the grounds that Plaintiff failed to exhaust her administrative remedies. [#4 at ¶ 19; *see also* 19-413 Case, #29] According to Plaintiff, because she relied upon the NALC's representative's statements that Plaintiff could not simultaneously pursue a union grievance and an EEOC complaint, she missed the deadline to file her EEOC charge. [#4, ¶ 19]

On February 11, 2020, Plaintiff filed the instant lawsuit against the NALC, asserting claims for negligence, breach of fiduciary duty, and negligent misrepresentation. [#4] On March 13, 2020, the NALC moved to dismiss all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] [##17, 18] Plaintiff filed a response opposing the Motion [#19], and Defendant filed a reply [#25].

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Accordingly, in deciding both motions, the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v.*

---

[2] Because the NALC answered the Complaint on March 10, 2020, the Motion is technically a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Fed. R. Civ. P. 12(c); *see also Bledsoe v. Jefferson Cty., Kan.*, No. 16-2296-DDC-JPO, 2019 WL 4573412, at *1 n. 2 (D. Kan. Sept. 20, 2019) (explaining that once all parties have answered the complaint, the pleadings are closed for purposes of a Rule 12(c) motion).

*United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III.  ANALYSIS

Through the Motion, the NALC argues that the Complaint should be dismissed in its entirety because all three state-law causes of action are preempted by federal labor law.  [*See generally* #18]  More specifically, the NALC argues that each of the "claims are preempted by federal labor law because they fall squarely within the scope of the duty of fair representation ("DFR"), a federal, judicially-created duty that unions owe to the employees they represent."  [*Id.* at 4]  The Court agrees with the NALC with respect to Plaintiff's negligence and breach of fiduciary duty claims, but disagrees with respect to Plaintiff's negligent misrepresentation claim.

Generally, "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). Collective bargaining agreements typically authorize and require the labor union to pursue grievances on behalf of their members. *See id.* at 653 ("[U]nless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf." (footnote omitted)). As the exclusive agent for the protection of its members' rights against their employer, the union has "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). This obligation is referred to as the "duty of fair representation" or "DFR." *Id.*

An employee is only permitted to enforce their rights under a collective bargaining agreement against their employer directly—rather than through the union—if the union has breached its DFR. *See Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998). Such an action—referred to as a "hybrid claim" under Section 301— "combines two conceptually independent causes of action, the first against the company for breach of the contract (a standard § 301 claim) and the second against the union for breach of the duty of fair representation (a claim implied by operation of a union's status under federal law as the sole bargaining representative of the employee)." *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)). To prevail on a hybrid claim, a discharged employee must prove: (1) some conduct by the worker's union that breached the DFR; (2) a causal connection showing that the union's breach affected the

7

integrity of the arbitration process; and  (3) a violation of the CBA by the company.  *Id.* at 1239; *see also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568-71 (1976); *Buck v. CF & I Steel, L.P.*, 531 F. App'x 936, 937 (10th Cir. 2013).

Here, the NALC argues that section 301 preempts Plaintiff's claims.  Section 301 provides that any federal district court may hear suits based on the breach of a contract between an employer and a labor union.  29 U.S.C. § 185(a).  The Supreme Court has read this provision expansively, holding that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization."  *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted).  The Court later extended section 301's preemptive effect beyond contract cases, encompassing claims "relating to what the parties to a labor agreement agreed" whether styled as a breach of contract or tort.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

The test for whether a state tort claim is completely preempted by section 301 is "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract."  *Id.* at 213.  In other words, section 301 preempts "claims founded directly on rights created by collective bargaining agreements, and also claims which are substantially dependent on analysis of a collective bargaining agreement."  *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir. 2000).  In these situations, the state law "claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law."  *Allis-Chalmers*, 471 U.S. at 220 (citation omitted).  And when claims are dismissed as preempted, a court may "permit amendment of [such]

8

preempted state law claims to allege claims under § 301." *Garley v. Sandia Corp.*, 236 F.3d 1200, 1215 (10th Cir. 2001).

Nonetheless, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Allis-Chalmers*, 471 U.S. at 211. Section 301 does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212. "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988). With these principles in mind, the Court addresses each of Plaintiff's claims below.

### A. Negligence

"To recover on a negligence claim, a plaintiff must establish that (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused that injury." *N.M. by & through Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017). "A negligence claim fails where the law does not impose a duty on the defendant to act for the plaintiff's benefit." *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005). "Whether a defendant in a particular negligence action owes a legal duty to the plaintiff is not a question of fact but is a question of law to be determined by the Court. *Id.* at 448.

Here, Plaintiff alleges that the NALC "had a duty to guide [P]laintiff through the regulatory steps to protect her rights." [#4, ¶ 21] But Plaintiff fails to plausibly allege a basis for this duty independent of the collective bargaining agreement. Nor does Plaintiff describe an independent basis for this duty in her response to the Motion. [*See generally*

9

#19] Because Plaintiff has not plausibly alleged that the NALC had a legal duty to Plaintiff independent of the collective bargaining agreement, the Court concludes that section 301 preempts Plaintiff's negligence claim. *Falco v. YRC Inc.*, No. 09-cv-01144-WYD-CBS, 2010 WL 749838, at *4 (D. Colo. Mar. 3, 2010) (dismissing negligence claim as preempted by section 301 because conclusory statements that the negligence claim was an "independent tort" arising out of a "special relationship" between plaintiffs and the union were insufficient to demonstrate that such claims were not "inextricably intertwined" with the collective bargaining agreement); *see also Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1170 (10th Cir. 1989) (finding that section 301 preempted state law negligence claim); *Blanks v. United Aerospace Workers Union UAW Local 848*, 837 F.Supp.2d 609, 616 (N.D. Tex. 2011) (same). Accordingly, the Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's negligence claim. The Court **DISMISSES WITHOUT PREJUDICE** the negligence claim, subject to Plaintiff filing an Amended Complaint that plausibly pleads that the NALC owed Plaintiff a legal duty of care independent from its obligations under the collective bargaining agreement.

### B.     Breach of Fiduciary Duty

To recover on a claim for breach of fiduciary duty under Colorado law, "a plaintiff must prove: 1) that the defendant was acting as a fiduciary of the plaintiff; 2) that he breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred damages; and 4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages." *Taylor v. Taylor*, 381 P.3d 428, 431 (Colo. App. 2016) (quotation and emphasis omitted). Plaintiff alleges that the NALC "had a fiduciary duty to [P]laintiff to guide her through the regulatory steps through which she could protect her rights." [#4, ¶ 25] Plaintiff fails to state any

basis for this fiduciary duty independent of the obligations under the collective bargaining agreement.  As a result, section 301 preempts Plaintiff's breach of fiduciary duty claim. *See Nelson v. Local 1181-1061, Amalgamated Transit Union, AFL-CIO*, 652 F. App'x 47, 48-49 (2d Cir. 2016) (breach of fiduciary duty claim preempted by Section 301); *Erlichman v. Stater Bros. Markets*, 554 F. App'x 552, 553 (9th Cir. 2014) (same); *Williams v. Nat'l Football League*, 582 F.3d 863, 881 (8th Cir. 2009) (same); *Pearson v. UAW Int'l Union*, 199 F. App'x 460, 462 (6th Cir. 2006) (same).  Accordingly, the Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's breach of fiduciary duty claim.  The Court **DISMISSES WITHOUT PREJUDICE** the breach of fiduciary duty claim, subject to Plaintiff filing an Amended Complaint that plausibly pleads that the NALC owed Plaintiff a fiduciary duty independent from its obligations under the collective bargaining agreement.

### C. Negligent Misrepresentation

Under Colorado law, to state a claim for negligent misrepresentation a plaintiff must plausibly allege that "(1) [the defendant] supplied false information in a business transaction; (2) it failed to exercise reasonable care or competence in obtaining or communicating that information; and (3) [the plaintiff] justifiably relied upon the false information."  *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009) (quoting *Campbell v. Summit Plaza Assocs.*, 192 P.3d 465, 477 (Colo. App. 2008)).  "The duty underlying the tort of negligent misrepresentation—to refrain from supplying false information to others for guidance in a transaction involving a pecuniary interest—is recognized at common law."  *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 541 (Colo. App. 2011).  "However, the scope of this tort pertains to conduct

that leads or induces another to enter into a transaction or agreement, not to representations directly related to performance of a contract." *Id.*

Here, Plaintiff alleges that the NALC "on several occasions in the course of its business with [P]laintiff represented to her that she could not pursue a union grievance and an [EEOC] complaint at the same time." [#4, ¶ 29] The alleged error in this statement relies not upon an interpretation of the collective bargaining agreement, but rather upon an errant understanding of 5 U.S.C. § 7121(d). [#19 at 2] Because Plaintiff's negligent misrepresentation claim does not require the Court to interpret the collective bargaining agreement, section 301 does not preempt this claim. *See Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1212 (9th Cir. 1999) (finding negligent misrepresentation claim not preempted by section 301 where the court does not need to interpret the collective bargaining agreement to resolve the claim); *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233-37 (2d Cir. 1997) (same); *Beals v. Kiewit Pac. Co., Inc.*, 114 F.3d 892, 895 (9th Cir. 1997) (same); *Berda v. CBS Inc.*, 881 F.2d 20, 26-28 (3d Cir. 1989) (same). Accordingly, the Motion is **DENIED** to the extent it seeks dismissal of Plaintiff's negligent misrepresentation claim.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [#17] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion is **GRANTED** to the extent it seeks dismissal of Claims One and Two but **DENIED** to the extent it seeks dismissal of those claims with prejudice. If Plaintiff wishes to continue to pursue claims for negligence and breach of

fiduciary duty, Plaintiff shall file an Amended Complaint by September 4, 2020, that addresses the deficiencies set forth in this Order.

2. The Motion is **DENIED** to the extent it seeks dismissal of Claim Three.

DATED:  August 14, 2020               BY THE COURT:

                                      s/Scott T. Varholak
                                      United States Magistrate Judge